# Lehman-Durr Co. v. Griel Bros. Co.

*Bill in Equity to Declare Conveyance of Property, Attachment Procured, &c. a General Assignment for the Benefit of Creditors.*

1. *What bill must aver under act of 1896-97.*—A bill framed under the act of February 16, 1897, "To further define general assignments and to prevent the fraudulent disposition of property" must show that the several conveyances made, attachments procured, etc., sought to be enforced as a general assignment, were so connected as to constitute but one transaction, and conveyed all, or substantially all, the debtor's property, and were made or procured after the enactment of the statute.

2. *Motion to discharge receiver and dissolve injunction; bill not considered as amended.*—On a motion to discharge a receiver and dissolve an injunction, the bill must be looked to as it is, and it is of no consequence that it may be capable of such amendment as will justify the appointment of the receiver and the issuance of an injunction. A different rule obtains in respect to a motion to dismiss for want of equity.

3. *Collusion between preferred creditors, or knowledge of debtor's purpose, not essential to the operation of the statute.*—If it is the debtor's purpose, running through all the conveyances or transfers, to put all his property in the hands of preferred creditors by a series of conveyances, and all the transfers are so made in line with such purpose as to constitute but one transaction, the statute converts all the conveyances and transfers, into a general assignment, however ignorant the

[Lehman-Durr Co. v. Griel Brothers Co.]

grantees or transferees may have been of the debtor's intent or the effect of his acts, and in whatever good faith each one of them may have accepted the conveyance made to him.

4. *Fraud not an element.*—The law acts upon transactions by which a debtor denudes himself of substantially all his property in preferential payment or security of some of his creditors, to the exclusion of others, and converts them into a general assignment, not because of any fraud on the part of such preferred creditors or even on the part of the debtor, but solely because of the wrong or injustice to other creditors in making such preferences.

5. *Insolvency of debtor not essential.*—If preferred creditors take transfers covering all the debtor's property made by him in pursuance of a design to devote all his property to their preferred debts, or to securing their payment, the statute applies whether they had notice of his insolvency or not, and whether, indeed, he was insolvent.

6. *Sufficiency of averment that debtor procured the attachment.* Under the act of 1897 where the procurement by the debtor of an attachment to be levied on his effects is one of the means adopted by him to the devotion of substantially all his property to preferred debts. it is sufficient in averment to follow the language of the statute and to allege that the debtor procured the issuance and levy of the writ.

APPEAL from Conecuh Chancery Court.

Tried before Hon. JERE N. WILLIAMS.

On May the 14th, 1897, appellees, Greil Bros. Co., and others, filed a bill in the Chancery Court of Conecuh County against appellants, Lehman-Durr Co., and others, seeking to have certain mortgages and transfers made by M. W. Etheridge & Son to other defendants, together with certain attachments against Etheridge & Son obtained by some of the defendants, all declared to be a general assignment for the benefit of all the creditors of Etheridge & Son. The bill also asked for a receiver and for an injunction against respondents restraining them from further prosecution of the attachment suits and from collecting or interfering with the status of the property covered by the mortgages, transfers, &c.; set out in the bill. The substantial allegations of the bill were that M. W. Etheridge & Son, being then indebted to complainants, owned $13,000 worth of choses in action, a large stock of goods, &c., with furniture and fixtures and also several described lots of real estate; that M. W. Etheridge & Son, prior to January 1, 1897, were indebted to defendant, Lehman-Durr Co., and sub-

sequently (time not specified), executed a mortgage on the real estate described and transferred to them $5,000 of accounts, all as security for the debt. It was also alleged that, being indebted to C. E. Crawford & Co., the defendants, Etheridge & Son, at a time not stated, transferred to them as collateral security for the debt $5,000 of choses in action; and also, that being indebted to the Alabama Fertilizer Co., defendants, Etheridge & Son, transferred to it as collateral security, $3,000 worth of choses in action, (time of transfer not stated) ; and then it alleged that on April 28th, 1897, defendants, Vandiver & Co. and Lehman-Durr Co., had attachments levied on the stock of goods, furniture and fixtures of Etheridge & Son, etc. It is alleged that the said attachments "were procured by said Etheridge & Son," and that the property covered by the mortgages, transfers and attachments aforesaid, with others made to other creditors brought in by amendment, was substantially all the property of Etheridge & Son subject to process for the collection of debts. The bill does not show the value of the property mortgaged, nor the amount of debts secured, nor the value of the property attached. The facts are further stated in the opinion. The prayer of the bill was that the several transfers and mortgages, and suing out of the said writs of attachment be adjudged a general assignment; that a receiver be appointed to take possession of all the property and collect the amounts due, as shown by the choses in action transferred, and the rents from the said real estate, and that an injunction be issued restraining the several defendants from the collection of the choses in action transferred to them; and also from the further prosecution of the attachment suits. A receiver was appointed and injunction issued as prayed. Thereafter the several defendants, respectively, moved the chancellor to dismiss the bill for the want of equity, and also filed a motion to vacate the order of appointment and discharge the receiver, to dissolve the injunction, and to discharge the injunction. The defendants, Lehman-Durr Co., also demurred to the bill upon the following grounds: "1. The said bill seeks to have various and sundry transfers of certain personal property, made by M. W. Etheridge & Son, to various and sundry defendants, mentioned in said bill, declared a general assignment, but fails to

show that the transfer to either of said parties was substantially all the property of the said M. W. Etheridge & Son. 2. The said bill seeks to have various and sundry transfers of certain personal property made by M. W. Etheridge & Son to various and sundry defendants, mentioned in said bill, declared a general assignment, but fails to show that there was any common purpose or design on the part of the various assignees of said property, or that either of said assignees had any knowledge of the several transfers made by M. W. Etheridge & Son. 3. It doth clearly appear in any and by the averments of said bill that the respective transfers of the said choses in action, by the said Etheridge to this defendant, and to the said Crawford & Co., and the said Alabama Fertilizer Co., and the suing out of said attachments were separate and independent transactions, having no connection, one with the other, and involving separate and distinct property; and it doth appear that neither one of said transactions was a sale, conveyance, transfer or disposition of all or substantially all of the property of the defendant, Etheridge & Son. 4. That said bill fails to show any common knowledge or collusion, or understanding or design between the assignees of said choses in action, or between any one or more of them, or between said assignees or any one or more of them and W. F. Vandiver & Co. and this defendant, the attaching creditors mentioned in said bill, that said transfer of said choses in action, the execution of said mortgage and the suing out of said attachments, should be made or accomplished as alleged in said bill. 5. That it doth not appear in and by the averments of said bill that the suing out of said attachments by this defendant and W. F. Vandiver & Co. was part or parcel of and had any connection with, the transfers of said choses in action. 6. That it doth not clearly appear in and by the averments of said bill that at the time of the transfer of said choses in action, it was a transfer of substantially all of the property of the said M. W. Etheridge & Son. 7. That it doth clearly appear in and by the averments of said bill that the transfer of said choses in action, and the execution of said mortgage, was not a transfer or conveyance of all, or substantially all, of the property of the said M. W. Etheridge & Son, then owned by them. 8. That it doth not clearly appear in and by the aver-

ments of said bill that at the time of said transfer of said choses in action, that the said M. W. Etheridge & Son were insolvent, or in a failing condition, and then unable to meet their obligations. 9. The said bill seeks to have various and sundry transfers of the personal property made by M. W. Etheridge & Son to various and sundry defendants mentioned in said bill, and the execution of said mortgage to this defendant declared a general assignment, but fails to show that said assignees of said personal property and said mortgagee, or any one of them then had any notice or knowledge of the insolvency of the said M. W. Etheridge & Son. 10. That the averment of said bill that said attachments were procured by the said M. W. Etheridge & Son, are vague and uncertain—the averment only of the conclusion of the pleader—without giving the facts in connection therewith, or stating how or in what manner said Etheridge & Son procured the issuance of said attachments. 11. Because said bill fails to show that even if said assignment of said choses in action, or said attachments were made or procured by said M. W. Etheridge & Son, for the purpose of defrauding their creditors, that said assignees, or either one of them, or said attaching creditors, or either one of them, had any knowledge of, or participated in said fraud. 12. It doth not appear in and by the averments of said bill, that the said Etheridge & Son are, or were, at the time of the filing thereof, indebted to the complainants, Steiner & Lobman, in any amount. 13. Because the complainants have a plain and adequate remedy at law. 14. It doth not appear by the averments of said bill, when the alleged transfers by the said Etheridge & Son, of said choses in action, and the execution of said mortgage were made." Upon the submission of the cause upon the pleadings, the chancellor decreed that the motion to dismiss the bill be overruled; that the motion to dissolve and discharge the injunction are separately overruled, except as to certain persons over whom he had no jurisdiction at the time it was issued; that the motion to vacate the order appointing the receiver, and to discharge said receiver, except as to such persons, be overruled; and that the first, second, and third grounds of the demurrer of Lehman-Durr Co. are separately sustained, and said demurrer is overruled as to its remaining grounds. There

are two appeals prosecuted by the defendants and embraced by agreement in the record, the one from the order appointing the receiver, and the other from the decree of the chancellor overruling the motion to dismiss the bill for the want of equity, and the motions to dissolve the injunction and the overruling of certain grounds of the demurrer interposed by Lehman-Durr Co.; and the rendition of each of these decrees is assigned as error.

MARKS & SAYRE, FARNHAN, CRUM & WEIL, STALLWORTH & BURNETT, and JAS. A. STALLWORTH, for appellants, cited, *Harwell v. Potts,* 80 Ala. 70; *Warren v. Hunt,* 21 So. 939; *Nelms v. Steiner,* 113 Ala. 563; High on Rec. 111, 112, 557; *Thompson v. Towers,* 87 Ala. 733; *Scott v. Ware,* 63 Ala. 189, 190; *Briarfield v. Foster,* 54 Ala. 634; *Moritze v. Miller,* 87 Ala. 331; *Crowder v. Moon,* 52 Ala. 220; 1 High on Inj. 21, 22; 2 *Ib.* 1620; *Dollins v. Lindsay,* 89 Ala. 217.

J. C. RICHARDSON, *contra,* cited, *Calahan v. Monroe,* 56 Ala. 305; *Hooper v. R. R. Co.,* 69 Ala. 534-5; *Bell v. Montgomery Light Co.,* 103 Ala. 280; *Pate v. Hinson,* 104 Ala. 601-2; *Robertson v. Walker,* 51 Ala. 484; *Kyle v. McKenzie,* 94 Ala. 236-9; *Bishop v. Wood,* 59 Ala. 253; *Stranger v. Watson,* 11 Ala. 335; Story's Eq. Pld. §27; Code of Ala. §3422; 2 High on Inj. §1509; *Barnard v. Davis,* 54 Ala. 574; *Ex parte Hamilton,* 51 Ala. 64; *Turner v. Stevens,* 106 Ala. 548; *Miller v. Bates,* 35 Ala. 589; *Gay, Hardie & Co. v. Strickland; Strickland v. Gay, Hardie & Co.,* 104 Ala. 378; *Rochester v. Armour,* 92 Ala. 436; *Ellison v. Moses,* 92 Ala. 227.

McCLELLAN, J.—It is said in the brief of counsel for appellees, who are complainants below, and it is apparent upon the bill, that the effort of complainants was and is to present a case under the act of February 16, 1897, "To further define general assignments and to prevent the fraudulent disposition of property." To that end the bill is wholly lacking in equity and insufficient to support the appointment of a receiver which was made upon it. The transactions alleged in the bill did not, in form, constitute a general assignment by which a preference or priority was given to one or some cred-

itors over others. The bill does not show that the several conveyances made, attachments procured, etc., etc., were so connected as to constitute but one transaction, nor make any attempt in that direction. Nor does it attempt to show that the conveyances, transfers and attachments covered all or substantially all of the debtors' property. And finally it does not show or attempt to show that any of the numerous conveyances and transfers alleged to have been made by the debtors to secure antecedent debts were made after the enactment of the statute referred to. And beyond all this, there is a failure to show a necessity for the appointment of a receiver in that it is nowhere averred that either the debtors or the alleged preferred creditors are insolvent, though if it were made to appear that the transactions amounted to a general assignment of substantially all the debtor's property it would not be necessary to aver the insolvency of the debtor. On this state of averment, it is most obvious that the receiver should not have been appointed in the first instance, and that the chancellor erred in overruling the motions of the respondents to vacate the order of appointment and to discharge the receiver.

Upon the same ground, that the bill is wanting in equity, the motions to dissolve the injunction issued against the attaching creditors should have been granted.

On the two questions we have considered, the overruling of the motions to discharge the receiver and to dissolve the injunction, respectively, the bill must be looked to as it is, and it is of no consequence that it may be capable of such amendment as will justify and authorize the appointment of a receiver and the issuance of an injunction.—*Harwell et al. v. Potts et al.*, 80 Ala. 70. A different rule obtains in respect of the motion to dismiss the bill for want of equity. That motion should not prevail when a bill is or may be susceptible of amendment which will give it equity. This bill is of that sort; and the chancellor properly overruled the motion to dismiss for want of equity.

At the time the decree below was made and at the time this appeal was taken, no appeal from an order refusing to *discharge* an injunction could be taken to

this court. We, therefore, do not consider the court's action in that regard.

We do not understand that collusion among preferred beneficiaries in a general assignment, or between them and the assigning debtor to the end of securing preferences, is at all essential to a case for administering the assignment for the equal benefit of all creditors. It is the fact that a preference has been attempted and not the knowledge or intent with which it was made or accepted that brings the statute into operation. And all this is as true where the transaction is not in form a general assignment, but involves two or more transfers to different creditors made under such circumstances as that the law holds them to constitute but one act. In such case it is not material what the transferees knew as to the debtor's purposes or what they intended as to the result of his acts, nor whether they combined or colluded one with another to induce the debtor to dispose of or incumber substantially all of his property to them severally. These might be evidential considerations going to show that it was the *debtor's* purpose, running through all the conveyances and transfers, to put all his property in the hands of preferred creditors by a series of conveyances, and that all of the transfers were so made in line with such purpose as that they constituted but one transaction, in effect a general assignment with attempted preferences. But this purpose on the part of the debtor may exist and its execution in the manner indicated may be attempted, and both the purpose and its attempted execution may be fully proved without any reference to the knowledge or intent of the grantees and transferees in such a transaction. And when it does so exist and is so attempted to be carried out, and these facts are made to appear, the statute converts all the conveyances and transfers into a general assignment for the equal benefit of all creditors, however ignorant the grantees or transferees may have been of the debtor's intent or the effect of his acts, and in whatever good faith each one of them may have accepted the conveyance made to him. And so there need be no fraud, or simulation of consideration or the like. The law acts upon transactions by which a debtor denudes himself of substantially all his property in preferential payment or security of some of his creditors to the exclusion of

others, and converts them into a general assignment, not because there is any fraud on the part of such preferred creditor or even on the part of the debtor; but solely upon a consideraton of the wrong and injustice to other creditors which would be wrought by allowing the debtor to devote all his effects to one or more creditors, leaving others, equally meritorious, nothing out of which to satisfy their demands.

And so, too, of the debtor's insolvency and notice thereof to the preferred creditors. If they severally take transfers covering all his property, made by him in pursuance of a design to devote all his property to their preferred debts, or to securing their payment, the statute applies whether they had notice of his insolvency or not and whether, indeed, he was insolvent.

Nor is it essential to the operation of the statute, of course, that substantially all of the debtor's property should be conveyed or transferred to any *one* of his creditors. If the separate transfers to any number, to the exclusion of other creditors, together cover all his property and they are all made under such circumstances as to show that all are referable to a purpose on his part to so dispose of all his property liable to execution, they fall within the operation of the statute and are to be considered a general assignment to be administered for all creditors alike.

Of course, as we have already seen, when the effort is to bring the case within the influence of the act of 1897, it must be shown that the conveyances, or transfers made, attachments procured, etc., etc., were made or procured after the enactment of that statute. And where the procurement by the debtor of an attachment to be levied on his effects is one of the means adopted by him to the devotion of substantially all his property to the payment of some of his debts in preference or priority to others, it is, in our opinion, sufficient in averment to follow the language of the statute, and to allege that the debtor procured the issuance and levy of the writ.

The foregoing views have reference to the several assignments of demurrer interposed by the Lehman-Durr Co. and to the action of the court thereon. They serve to show our ruling upon each of said assignments; and, without particularizing, it will appear from what we have said that certain of the assignments of demurrer

which were sustained by the chancellor should have been overruled, and that certain of them overruled should have been sustained.

The decree of the chancellor, in so far as it overrules the motion to dismiss the bill for want of equity, is affirmed. Upon the demurrer of the Lehman-Durr Co. and in refusing to dissolve the injunction, and in overruling the motion to vacate the order appointing and to discharge the receiver, the decree will be reversed; and a decree will be here entered sustaining the demurrer, dissolving the injunction, and discharging the receiver. Complainants have thirty days in which to amend their bill; and when it is so amended, if it can be, in accordance with this opinion, they may, of course, renew their application for injunction and receiver.

Affirmed in part, and reversed and rendered in part.