[Taylor et al. v. Dwyer.]

# Taylor et al. v. Dwyer.

*Bill in Equity by Creditor to have Conveyance by Debtor set aside as Fraudulent and Void.*

1. *Fraudulent conveyance; equity of bill seeking to set aside conveyance for simulated and non-existent consideration.* A bill in equity by a creditor, seeking to have a bill of sale made by the insolvent debtor of his property set aside and annulled, and the property subjected to the payment of the complainant's debt, which after averring the execution of said bill of sale from the debtor to his son, then avers that said sale was a mere pretense, was a fraud pure and simple, made and agreed upon between the debtor and his son, while the sheriff was proceeding to make a levy of the execution issued on the judgment recovered by the complainant against his debtor, that the entire consideration as expressed in said pretended bill of sale was fictitious, simulated and fraudulent, and that no money or other consideration of value was paid by the pretended purchaser, clearly presents a case of the conveyance of property by the debtor on a simulated consideration to hinder, delay and defraud his creditors, and is sufficient to give a court of equity jurisdiction.

2. *Same; equity of bill seeking to set aside a conveyance by a debtor upon the ground of the sale being a mortgage, and reserving a benefit to the grantor.*—Where a bill is filed by a creditor seeking to set aside a bill of sale executed by his insolvent debtor, and facts are averred which show that there was no real sale of the property, but a mere pretense of sale to cover the transaction which in truth and in fact involved a mortgage given by the debtor to secure a pre-existing debt alleged to be due from him to the grantee in the bill of sale, and that the bill of sale operated by secret agreement between the parties thereto as a mortgage only, there is shown by such averments to be a secret benefit reserved to the insolvent debtor, which opens the transaction to the successful assault of creditors and gives the bill equity.

3. *Same; equity of bill to set aside conveyance executed in trust for the grantor.*—A bill filed by a creditor to set aside a bill of sale executed by his insolvent debtor, which avers "that

[Taylor *et al.* v. Dwyer.]

said conveyance and bill of sale * * * was made in trust for the use of the person making the same, and is, therefore, fraudulent and void," as to the complainant, and then avers in deta_l the facts and circumstances attending the transaction an.. the execution of said bill of sale, sufficiently presents a cause for relief against the transfer of property by the insolvent debtor to another in secret trust for himself and contains equity.

4. *Same; equity of bill to set aside conveyance by insolvent debtor for inadequacy of consideration.*—A bill in equity by a creditor to set aside a bill of sale by his insolvent debtor, of mules, drays, harness and.dray business, averred the $1,391, the consideration as expressed in the bill of.sale, was grossly inadequate for the property alleged to have been sold, that said consideration was a pre-existing debt; that there must have been, according to the mortgage which had been previously given by the complainant's debtor to the bank, some fifty-four head of mules, and a sufficient number of wagons, drays and harness to employ that number of mules, and besides such conveyance transfers all the dray business which, as oratrix averred, was well established, and paid well; that there was on the mules at the time of the transfer a mortgage securing a debt to a bank for $2,500. It is then averred in the bill that the complainant is informed and believes, and therefore states that said mules, drays, wagons and dray business was really worth from $8,000 to $10,000, and that, therefore, the said $1,391 of debts made the consideration for the sale of such valuable property, was grossly inadequate for the same. It was not shown by the bill of sale how many mules, drays and harness were sold, the bill of sale describing its subject matter as "all my drays, wagons and harness, plows and other holdings, also my mules that are now embraced in the mortgage," to the bank. It was then averred in the bill that at the time of the execution of the bill of sale, the debtor had in his possession only eleven or thirteen mules, and that only this number passed under it; that there were at that time only a few drays, sets of harness of any considerable value, all the other property having been disposed of by the debtor prior to the execution of the bill of sale, and that the mules which were transferred by the bill of sale were not worth over $1,000. *Held*: That such bill does not present a case for equitable interposition upon the ground that the consideration expressed in the bill of sale by the insolvent debtor was grossly inadequate to the property transferred, and that the averments and statements in said bill made *arguendo* and as merely conclusions of the pleader, were insufficient to give equity to such bill.

[Taylor *et al.* v. Dwyer.]

5. *Same; conveyance can not be declared general assignment on bill filed to set it aside as fraudulent.*—Where a bill in equity is filed by a creditor to have set aside and declared fraudulent and void a conveyance by an insolvent debtor, and that the property conveyed therein be subjected to the satisfaction of complainant's debt to the exclusion of the claims of other creditors, facts being averred to show that said conveyance was made with the intent to hinder, delay and defraud other creditors, the complainant is not entitled to have said conveyance declared a general assignment for the benefit of all the creditors of the insolvent debtor, such relief not being in consonance with, but directly contrary to the intent and purpose of such bill.

6. *Equity jurisdiction; effect of bill failing in one disjunctive aspect.*—Where in a bill in equity, the complainant relies upon several disjunctive sets of averments as furnishing grounds for relief, and one of the disjunctive aspects fails and is insufficient as a ground for equitable interposition and furnishes no ground for relief, the bill as a whole fails to make out a case of equitable cognizance, is subject to demurrer, and can not be maintained.

7. *Same; same; motion to dismiss bill for want of equity.*—Such a bill being capable of amendment by striking out the defective disjunctive averments or otherwise, a motion to dismiss it for the want of equity is properly overruled.

8. *Equity jurisdiction; bill for receiver must offer to do equity.* Where a bill is filed asking for the appointment of a receiver, and it is averred therein that there is a mortgage existing upon the property sought to be placed in the hands of the receiver, such bill is objectionable and subject to demurrer, in that it fails to do equity in respect of the debt due the mortgagee.

9. *Same; failure to offer to do equity no ground for dismissing bill on motion.*—Where a bill in equity is defective for its failure to offer to do equity, such defect being curable by amendment, furnishes no ground for dismissing the bill for the want of equity on motion.

10. *Bill to subject property to payment of judgment in trover; plea of exemption insufficient.*—Where a bill in equity is filed by a creditor who has recovered a judgment in an action of trover, against an insolvent debtor, to have set aside and annulled conveyance by such debtor upon the ground that it was fraudulent and void, pleas interposed by said debtor who was the grantor in the conveyance, and the grantee therein, seeking to set up the fact that the property conveyed was exempt to said debtor, and that, therefore, the

[Taylor *et al.* v. Dwyer.]

complainant could not complain of the conveyance of such exempt property, present no defense and are insufficient, in that the right of exemption does not exist against the judgment recovered in the action of trover.

11. *Bill in equity to have conveyance set aside as fraudulent; when complainant not shown to have adequate remedy at law.* Where a bill is filed by a judgment creditor to have a conveyance of his insolvent debtor set aside as fraudulent and void, and it is averred in said bill that upon the sheriff seeking to have the execution issued upon said judgment upon property in the possession of the debtor, the grantee in the alleged fraudulent conveyance interposed a claim to sa d property, and the sheriff declined to levy the execution unless the complainant indemnified him, and it was further averred that the transfer under which the grantee in said conveyance claimed the property was fraudulent and void, and made for the purpose of hindering, delaying and defrauding the debtor's creditors, a demurrer to such bill, upon the ground that it is without equity, for that it discloses that the complainant had an adequate and complete remedy at law, by having her execution levied upon the property transferred by the debtor; is without merit and is properly overruled; since the transfer as set up in the bill and the facts attendant upon the levy presented an impediment to the efficacious pursuit of the complainant's legal remedy, and the further facts averred showing a fraudulent transfer giving a court of equity independent jurisdiction of such cause.

12. *Bill in equity to have conveyance set aside as fraudulent and void; appointment of receiver; when should not be appointed.* Where in a bill filed by a creditor to have set aside a conveyance as fraudulent and void and for the purpose of having a receiver appointed to take charge of the property fraudulently conveyed, the complainant relies upon several disjunctive sets of averments for the relief prayed for, but the bill does not make out a case for equitable interposition in one of the disjunctive aspects, a receiver should not be appointed as prayed for; the complainant not being entitled to maintain such bill without further amendment.

APPEAL from the Chancery Court of Montgomery. Heard before the Hon. WILLIAM L. PARKS.

The bill in this case was filed on July 29, 1899, by the appellee, Henrietta J. Dwyer, against the appellants. The bill was several times amended, and as amended it averred that in 1893 the complainant delivered to Frank G. Taylor, her brother-in-law, the sum

of three thousand dollars, which was received by him out of insurance upon the life of her deceased husband; that said money was to be loaned out by said Taylor on good security at interest for complainant's benefit; that said Taylor in disregard of his trust and obligations converted said money to his own use and continued to deceive the complainant about said money, representing to her that he had loaned out the money, while as a matter of fact he had used it himself and converted it to his own use; that finding it impossible to collect said money from said Frank G. Taylor, she finally instituted an action of trover against him, and on April 25, 1899, recovered a judgment against said Taylor for $2,432.42; that an execution was issued upon this judgment and put in the hands of the sheriff; that said sheriff found in possession of said Taylor a number of drays, wagons, gear, mules and a horse and buggy and harness; that the sheriff levied said execution upon the drays, the horse and buggy, and was proceeding to levy upon the mules, when J. Hunt Taylor, a son of respondent, made claim to all the property under and by virtue of sales claimed to have been made to him by his father in April, 1898, and in August, 1898; that thereupon the sheriff refused to levy further unless the complainant indemnified him in the sum of two thousand dollars, which she was unable to do, having been reduced to insolvency by the conversion of her entire fortune by Frank G. Taylor, and being also a non-resident. It was then averred in the bill as follows: "Said J. Hunt Taylor claimed said property under and by virtue of what is claimed by him to be a bill of salt of date April 20th, 1898, by his said father, Frank G. Taylor to him of 'all my drays, wagons and harness, plows and other tools; also my mules that is now embraced in mortgage to Merchants & Planters National Bank; also agreeing to better satisfy said debt sell the entire business interst I have known as a dray business;' and under another bill of sale of the first day of August, 1898, 'of one bay horse and buggy and harness, horse named Fred.'" The sheriff levied on six drays and four pieces of drays claimed under said first bill of sale and on the horse and buggy and harness

claimed under the second bill of sale. * * * Oratrix avers that said pretended sales are frauds pure and simple made and agreed upon, oratrix believes, while said sheriff was making said levy in the hopes of inducing him to desist, which it did and oratrix avers that the entire consideration for said pretended sales is fictitious, simulated and fraudulent, and that no money or other consideration of value was paid by said J. Hunt Taylor in either instance; that said respondent Frank Taylor has owned and run the principal dray line of the city of Montgomery for some years, and in such capacity has been the hauler of the bulk of the cotton crop marketed in said city at remunerative prices therefor, and has also been the principal hauler for contractors engaged in doing public work for said city. Oratrix is not informed of the number of drays, wagons, harness, plows, tools and mules used and owned by said respondent Taylor in the prosecution of said business, but knows from the recitals of the said mortgage given by him to the Merchants & Planters Bank of the city of Montgomery of the date of February 15th, 1898; that said Frank Taylor mortgaged to said bank to secure a loan of twenty-five hundred dollars, forty-eight head of mare mules and agreed to buy out of said money loaned by said bank six additional mules to be subject to said mortgage. The number of drays owned by respondent Frank Taylor is not known to oratrix, nor is the number of wagons, nor dray and wagon harness, but oratrix is informed and believes, and therefore states, that the said Frank Taylor owned sufficient number of drays, wagons and harness to employ said fifty-four mules in said dray business. All of said property was conveyed or attempted to be conveyed as aforesaid to said son, J. Hunt Taylor, by bill of sale of April 20th, 1898, in consideration of past indebtedness of thirteen hundred and ninety-one dollars, except the said horse and buggy and harness, which said son, J. Hunt Taylor, claims by bill of sale of August the 1st, 1898, in consideration of two hundred dollars paid cash."

"Oratrix charges and avers that said pretended sale of April 20, 1898, is absolutely fraudulent and void,

made to hinder, delay and defraud her and put said property beyond her reach and without any consideration whatever therefor; that along with said instrument of April 20, 1898, claimed to be a bill of sale said J. Hunt Taylor presented to the sheriff: at the time he was levying on the said writ of your said oratrix, the notes on which he claimed the bill of sale was based; that one of and the smaller of said notes, expressing no date for payment, is for the sum of five hundred dollars and is dated January 1, 1897; that the other and greater of said notes is for eight hundred and ninety-one dollars, without expressing date for payment * * * is of date of January 3d, 1898. Oratrix avers that this is a scheme of a corrupt and dishonest father and son, concocted, she believes during the emergency of the levy of her execution, or in anticipation thereof to induce the sheriff to desist, and is without consideration; that not being an adept in execution of as in planning fraud, the clumsy veneering but accentuates the true character of a conspiracy of this corrupt father and son to defraud your oratrix; and in substantiation of said foregoing averments, oratrix says, after said pretended sale of April 20, 1898, said respondent, Frank G. Taylor, continued in all respects to manage and control said dray business as he had before said pretended sale; that the law day of said mortgage to said bank was about the 15th day of July, 1898; that prior to said pretended sale to said J. Hunt Taylor, no part of said bank debt had been repaid said bank, but that after said pretended sale said respondent, Frank Taylor, begun and continued to make payments to said bank on said mortgage debt until at the time of the levy of oratrix' execution as aforesaid on a portion of Taylor's effects in May, 1899, there was unpaid on said mortgage only about two hundred and fifty dollars; that since said attempted levy on said mules, said son, J. Hunt Taylor, to give a seeming virtue to his fraudulent claim has for the first time individually made a payment to said bank of one hundred dollars to be credited as a payment from him and has for the first time informed said bank of his ownership of said property; that said Frank Taylor returned all of said prop-

erty now claimed by J. Hunt Taylor, under oath to the
tax assessor of said county on January 31, 1899, as his
own and that on the very day of the said attempted
levy, as well as all the time intervening said sale of
April 20, 1898, to said levy, said Frank Taylor was in
open, notorious possession of said property doing pub-
lic hauling for any one desiring it and willing to pay
for it; that said J. Hunt Taylor is a young man, clerk-
ing in a shoe store on a small salary and was without
any visible property at the time of said transfer, and is
and always has been an inmate of his father's house-
hold."

"Oratrix avers that said conveyance and bill of sale
of April 20, 1898, was made in trust for the use of the
person making the same, and is, therefore, fraudulent
and void as to her."

It was then further averred in the bill that "the said
Frank Taylor was insolvent at the date of said sale ev-
idenced by said bill of sale of April 20, 1898, to his said
son, Hunt Taylor, and that the said son, Hunt Taylor,
knew of his insolvency; that by said sale, the said Frank
Taylor conveyed to his son, Hunt Taylor, substantially
all the property of which he was possessed. And that
the said sale was made with the purpose and intent of all
parties thereto to hinder and delay and defraud your
oratrix; that a benefit was reserved to said Frank G.
Taylor and that the said sale is without any consid-
eration."

The averment of the bill as to the inadequacy of the
consideration expressed in the bill of sale is copied in
the opinion. It was further averred in the bill as fol-
lows: "Oratrix further avers that even should she be
mistaken as to the lack of any consideration or its in-
adequacy, that said pretended bill of sale was at most
given and intended to operate as a mortgage; that the
same was never recorded as required by law, and is,
therefore, void as to her."

It was then further averred in the bill that the exe-
cution issued upon the judgment recovered by the com-
plainant had been levied upon ten mules, and the horse
and buggy and harness of the respondent, Frank Tay-
lor, and that J. Hunt Taylor had executed a bond and

replevied said property, and there was now pending a
claim suit for the same; and that upon oratrix' informa-
tion and belief the respondent, Frank Taylor, had dis-
posed of the larger portion of the property attempted
to be and purported to be conveyed by the bill of sale of
April 20, 1898; that of the 54 mules the complainant is
informed and believes that there are 13 mules in the
hands of the respondent undisposed of; that the dispo-
sition of said property was made by Frank Taylor in
anticipation of the levy of the complainant's execution
for the purpose of putting it beyond the satisfaction
of the claim of the complainant. It was further
averred in the amendment to the bill that at the time
of the filing of the original bill, the Merchants & Planters
National Bank was the holder of a mortgage upon the
mules for the amount of $2,500; that at said time there
was only due upon said mortgage $150 or $200; that
the bank consented that the complainant should levy
her execution upon said property and sell and pay off
said mortgage first out of the proceeds; that the prop-
erty levied upon under said execution was replevied by
J. Hunt Taylor; that the bank was not notified of the
application for the appointment of a receiver prayed
for in said bill, for the reason that it was willing and
had consented that said receiver should be appointed;
that after the application was made by the complain-
ant for the appointment of a receiver, and after the
appointment thereof by the registrar, James P. Bullock
interposed a claim to the property under and by virtue
of a transfer by the bank to him of its mortgage and
claim against Frank Taylor; that while said James P.
Bullock purported to be the assignor of the bank's mort-
gage and debt, the money paid to the bank was furnished
by said Frank Taylor and J. Hunt Taylor and that said
Bullock simply represented them and allowed them to
use his name for their convivous purpose.

To the bill as amended Frank G. Taylor, J. Hunt
Taylor, the Merchants & Planters National Bank and
James P. Bullock were made parties defendant.

The prayer of the original bill was that a receiver be
appointed to take charge of the property involved in
the suit, and that the property held and claimed by J.

[Taylor *et al.* v. Dwyer.]

Hunt Taylor under said bill of sale be decreed to be held in fraud of the complainant; that said bill of sale be declared fraudulent, null and void, and that the property be subjected to the payment of the claim of the complainant, and that the mortgage debt to the bank be declared settled and cancelled, and that the complainant be given a personal decree or judgment against J. Hunt Taylor for any balance that may remain due. After the filing of the original bill, the complainant made an application for the appointment of a receiver. The register in response to this application appointed a receiver, who was instructed to take charge of the property. From this decree making the appointment the defendant appealed to the chancellor. The defendants, Frank G. Taylor, J. Hunt Taylor and James P. Bullock, demurred to the original bill as amended, upon the following grounds; 1. Said bill is filed in a double aspect, and each aspect fails to show that complainant is entitled to relief. 2. Said bill contains alternative averments for relief, and it appears that each alternative does not entitle complainant to relief. 3. Said bill purports to be filed by a judgment creditor of F. G. Taylor, and at the same time shows that her judgment obtained in the city court of Montgomery is invalid and void. 4. Said bill fails to show that complainant in any aspect is entitled to the appointment of a receiver. 5. Said bill fails to show in any aspect that complainant is entitled to relief. 6. Said bill shows that complainant has, if any, an adequate remedy at law.

And the said defendant separately demurs to the first aspect in which said bill is filed, viz., that the bill of sale described therein was made with the fraudulent intent and purpose of depriving complainant of her rights, and assigns the following grounds: 1. That the allegation of fraud and collusion are mere conclusions of the pleader, and without sufficient facts alleged to support the same.

And to the second aspect in which said bill is filed, viz., inadequacy of consideration, the defendants each assign the following grounds: 1. That while alleging gross and inadequacy of consideration, the allegations of the bill fail to support said charge. 2. That the

[Taylor *et al.* v. Dwyer.]

allegations of said bill affirmatively show that the price paid to F. G. Taylor for the property mentioned and described in the bill of sale was the full and fair value of the interest of said F. G. Taylor therein.

And to the third aspect in which the bill is filed, viz., that said bill of sale was at most given and intended as a mortgage, that the same was never recorded as required by law, and is, therefore, void as to complainant, that she was an execution creditor without notice, the following grounds of demurrer are separately assigned by said defendants: 1. It is not shown that complainant was a creditor who had extended or given credit subsequent to the making of said bill of sale. 2. It is shown that complainant was a creditor prior to the execution of said bill of sale. 3. It is not shown that complainant had no actual notice of said bill of sale. 4. It is not shown that complainant was a creditor without notice, as contemplated by section 1009 of the Code of Alabama. 5. It is not shown by the allegations of the bill in this respect that complainant was an execution creditor with a lien acquired without notice of said bill of sale and subsequent to the execution thereof. 6. It is not shown by the allegations in this respect that complainant was an execution creditor, with a lien acquired without actual notice of said bill of sale. 7. There is no law authorizing the recording of the bill of sale described, and the record of the same would not impute notice thereof, or notice that it was intended as a mortgage. 8. It is not alleged in this respect that defendant F. G. Taylor was embarrassed or insolvent at the time of the execution of said bill of sale. 9. No facts are alleged in this aspect to bring the same within the influence of section 2150 of the Code of Alabama.

To so much of the bill as averred that the bill of sale of April 20, 1898, was made in trust for the use of F. G. Taylor and was, therefore, fraudulent and void as to complainant, the said defendants demurred upon the ground that such averment was merely a legal conclusion of the pleader and does not present a reversible issue.

To so much of the bill as averred that F. G. Taylor was insolvent at the date of the bill of sale of April 20,

1898, and that said Taylor by said bill of sale conveyed substantially all of his property to J. Hunt Taylor, the plaintiff demurred upon the ground that said bill not being a general creditors' bill, but only for the benefit of complainant, such averments presented no ground for relief, and that said averment was inconsistent with the other purposes of the bill and contains allegations entitling complainant to different and inconsistent grounds of relief.

The defendants, F. G. Taylor and J. Hunt Taylor, each filed separate pleas in which they set up that Frank G. Taylor was a resident of Alabama, over 21 years of age; that the said debt of F. G. Taylor was contracted since the 23d day of April, 1875, and that the total value of the property conveyed in the bill of sale of April 20, 1898, did not exceed in value the sum of $800, and that said F. G. Taylor was entitled to claim said amount as exempt to him, and that for this reason the property could not be subjected to the payment of the complainant's claim. The defendant also moved to dismiss the bill for want of equity.

The cause was submitted upon the defendant's demurrers to the bill, the motion to dismiss the bill for want of equity, and the appeal of the defendants from the order appointing the receiver, and on the sufficiency of the pleas interposed by Frank G. Taylor and J. Hunt Taylor.

Upon the hearing on this submission, the chancellor rendered a decree in which he adjudged and ordered that the demurrers to the bill and the motion to dismiss be overruled; that the order appointing a receiver be sustained, and that said pleas of Frank G. Taylor and J. Hunt Taylor are insufficient and do not present a valid and legal defense to the bill. From this decree the defendants appeal, and assign the rendition thereof as error.

JOHN G. WINTER and JACK THORINGTON, for appellant.—The bill in this case was filed in several aspects, and inasmuch as there was a failure in the bill in one of the aspects to make out a case for relief, the demurrer should have been sustained. It is a cardinal rule that if one alternative is bad it vitiates the whole, and no

relief can be granted.—3 Brick. Dig., 378, § 183; *Curran v. Olmstead,* 101 Ala. 692; *Mountain v. Whitman,* 103 Ala. 630.

The bill fails to aver that the complainant was in one aspect entitled to the appointment of a receiver. A receiver should not have been appointed unless it 's reasonably clear and free from doubt that the complainant will ultimately succeed and is entitled to the relief which is prayed for.—*Warren v. Pitts,* 114 Ala. 65; *Weatherly v. Water Works Co.,* 115 Ala. 156; *Ft. Payne v. Ft. Payne,* 96 Ala. 477; *Lehman v. Griel,* 119 Ala. 262.

The bill was defective and subject to demurrer for its failure to offer to do equity.—*Pearson v. King,* 99 Ala. 126; *Ex parte R. R. Co.,* 95 U. S. 221.

The motion to dismiss the bill for the want of equity should have been sustained. The bill fails to offer to do equity by offering to redeem from under the mortgage, and there are no averments which excuse the complainant from this duty. It was averred in the bill that F. G. Taylor had conveyed substantially all of his property. Without reference to fraudulent intent or motive, or purpose to defraud complainant of an antecedent indebtedness will by virtue of the statute, in a court of equity, impress upon the property a trust for the equal benefit of all creditors alike.—*Morrow v. Campbell,* 118 Ala. 330; *Gay v. Strickland,* 112 Ala. 567; *Lehman v. Griel, supra.*

The pleas interposed by the defendants, F. G. Taylor and J. Hunt Taylor, were sufficient, and the court should have sustained them.

If, as alleged, F. G. Taylor's entire personalty at the time of the execution of the bill of sale was not in value over $1,000, then there could be no fraud of which complainant could complain, whatever the actual intention may have been. And in such cases the law makes the selection, and, therefore, affirmative action is unnecessary on the part of the debtor to obtain the benefit of his exemption.—*Alley v. Daniels,* 75 Ala. 403; *Brinson v. Edwards,* 94 Ala. 447; *Pollack v. McNeil,* 100 Ala. 203; *Wright v. Smith,* 66 Ala. 514; *Hines v. Duncan,* 79 Ala. 112; *Fuller v. Whitlock,* 99 Ala. 411; *Kennedy v. Bank,*

107 Ala. 170; *Kennedy v. Bank,* 113 Ala.279.

The receiver was improperly appointed by the register. The bill being defective and the complainant not being entitled to the relief prayed for, a receiver can not be appointed.—*Miller v. Lehman,* 87 Ala. 517; *Lehman v. Griel, supra; Strickland v. Gay, supra.*

The complainant has an adequate remedy at law for the preservation of the property from waste, loss or threatened destruction, material injury or removal beyond the jurisdiction of the court.—*Pierce v. Jennings,* 94 Ala. 524; *Ft. Payne v. Ft. Payne,* 96 Ala. 476; Smith on Receivers, § 44; 20 Am. & Eng. Ency. Law, 309; Beach on Receivers, 10; High on Receivers, §§ 10, 403, 592.

DeYampert and Hausman and C. P. McIntyre, *contra.*—That a receiver, at the suit of a judgment creditor recognizing the mortgage lien and leaving open to the chancellor the whole realm of equity administration under the general prayer, can be appointed is not questioned by any authority.—High on Receivers, 445, § 420; Beach on Receivers, 663, § 621; *Ib.* 591, § 420. A receiver of chattels mortgaged has often been appointed, at the suit of a judgment creditor, even where the mortgagee was in possession.—Authorities *supra; Rose v. Bevan,* 10 Md. 466; *Mixon v. Dunkling,* 48 Ala. 455; *Ivans v. Welch,* 63 Ala. 250; *Lehman v. Meyer,* 67 Ala. 396; *Cawthorn v. Jones,* 73 Ala. 82; *Matthews v. Mobile Insurance Co.,* 75 Ala. 85; *Sweetzer v. Buchanan,* 94 Ala. 574; *Jones v. Smith,* 92 Ala. 457.

The bill, it will be observed, is a creditors' bill, and as such properly invokes the jurisdiction of equity. Equity having assumed jurisdiction, will after an old practice, adjust the liens and rights of all parties in the subject of the suit.—*Norris v. Deedley,* 78 Ala. 124; *V. & A. Mfg. Co. v. Hall,* 93 Ala. 542.

McCLELLAN, C. J.—The bill in this case was filed by Henrietta Dwyer, a creditor by judgment in tort of Frank G. Taylor, against said Taylor, his son, J. H. Taylor, and the Merchants and Planters National Bank. J. P. Bullock was afterwards made a party defendant

by amendment. The purpose of the bill is to subject to the satisfaction of complainant's said judgment certain chattels which belonged to Frank G. Taylor and which he sold or mortgaged to J. H. Taylor in alleged payment or security of a debt which said Taylor and his said son claim the former owed the latter. The bill is intended to attack this transaction on the grounds, *first,* that the consideration set up for said transfer, said alleged indebtedness, was wholly simulated, and non-existent, *second,* that, if mistaken as to simulation, the amount of said debt was grossly inadequate as a consideration for the property transferred, *third,* that said transaction between F. G. and J. H. Taylor was in form of a sale by the former to the latter in payment of an antecedent debt and was evidenced by a bill of sale, yet it was intended thereby merely to secure said debt, and said bill of sale was intended to operate as a mortgage only; and, *fourth,* that the transaction was a conveyance by F. G. to J. H. Taylor in trust for the grantor.

The bill in its first aspect is not attacked by the demurrers (except in so far as the whole bill is assailed for failing to offer to do equity and because it states no case for equitable relief in its other alternatives), and it needs only to be said here that the averments in this alternative clearly present a case of a conveyance of property by a debtor on a simulated consideration to hinder, delay and defraud his creditors.

The averments intended to support the third alternative basis of the relief prayed are, in our opinion, quite sufficient to that end. They are to the effect that there was no real sale of the property, but the mere pretense of a sale to cover a transaction which in truth and in fact involved a mortgage to secure a pre-existing debt, the bill of sale operating by secret agreement of the parties to it as a mortgage only. On these averments there was a secret benefit reserved to the insolvent debtor which opens the transaction to the successful assault of creditors.—*Hill v. Rutledge,* 83 Ala. 162; *Steiner v. Scholze,* 114 Ala. 88.

The fourth alternative presents a case for relief against a transfer of property by an insolvent debtor to another in secret trust for himself.

[Taylor *et al.* v. Dwyer.]

As to the second alternative upon which relief is sought the averments of the bill having express reference to that aspect are the following: "Oratrix further avers that the consideration, to-wit, thirteen hundred and ninety-one dollars, even if it passed between said Taylor and his son, is grossly inadequate; that there must have been, according to said bank mortgage, some fifty-four head of mules and a sufficient number of wagons and drays and harness to employ that number of mules, and besides the said conveyance transfers all the dray business, which, as oratrix has averred, was well established and paid well. There was on the mules at the time of the transfer a debt secured by mortgage of twenty-five hundred dollars. Oratrix is informed and believes and therefore states that said mules, drays, harness, and dray business were worth from eight to ten thousand dollars; therefore oratrix avers that the said thirteen hundred and ninety-one dollars of debts made the consideration for the sale of such valuable property was a grossly inadequate price for the same. The said Frank G. Taylor was insolvent at the time he sold said mules, drays, wagons, harness, plows, tools, etc., by said bill of sale of April 20th, 1898." The refreence here made to the bank's mortgage will be understood when it is stated that in February, 1898, F. G. Taylor executed a mortgage to the Merchants and Planters National Bank on forty-eight mules, drays, wagons, harness, etc., to secure a debt of twenty-five hundred dollars, that Taylor therein agreed to purchase six other mules with a part of the twenty-five hundred dollars borrowed from the bank, and that said additional mules should also be covered by the mortgage, and that in the bill of sale which is here attacked the mules sold by F. G. Taylor to J. H. Taylor are described as "my mules that is now embraced in mortgage to Merchants and Planters National Bank." It is to be observed in this connection that the paragraph quoted does not aver what property was embraced in the bill of sale and passed by it in point of fact to J. H. Taylor. It merely sets forth *arguendo* that fifty-four mules and a sufficient number of wagons, drays

[Taylor *et al.* v. Dwyer.]

and harness to employ them *must have been* embraced in the transaction *because* that amount of property was embraced in the mortgage to the bank and the bill of sale describes its subject matter as "all my drays, wagons and harness, plows and other tools; also my mules that is now embraced in the mortgage to Merchants and Planters National Bank." Even the inference of the complainant is not supported by the bill of sale except as to the mules; the other property is not described therein as being embraced in the mortgage to the bank. Yet the conclusion of the pleader that the property transferred was of the value of eight or ten thousand dollars is (as to every item set down in the bill of sale except the dray business, as to which no separate valuation is stated and no facts are stated upon which a value could be arrived at) based upon the assumption that a certain number of mules, wagons, drays, etc., are covered and conveyed by the bill of sale which the pleader does not know to have been so embraced, and does not aver were embraced, but which she argues must have been embraced because some of the items, the mules, are described as being those embraced in the mortgage, and it appears that forty-eight mules were embraced, and six others were to be purchased and to pass when purchased under the mortgage. These argumentative averments taken at their face value are insufficient to support the general averment of the pleader that the property transferred was worth eight or ten thousand dollars, or her more general conclusion that the debt which the bill of sale purported to pay was grossly inadequate as a consideration for the property. But we are prevented taking these averments at their face value even by other positive averments of fact set forth in the bill. For it appears from affirmative allegations in other parts of the bill that at the time of the execution of the bill of sale Frank G. Taylor had only eleven, or at the most thirteen, mules, that only this number passed under it, that there were at that time only a few drays and sets of harness of inconsiderable value, all other mules and drays, etc., having been otherwise disposed of by him prior to the transfer to his son, and that the mules which were transferred

were not worth over one thousand dollars at the time of the transfer. It is also shown, as we have seen, that J. H. Taylor took this property subject to the bank's mortgage for twenty-five hundred dollars. It is clear, therefore, that the bill in the alternative under consideration utterly fails to present a case for equitable interposition. The *facts* averred not only do not support the patently argumentative conclusion of the pleader as to the disparity in value between the property conveyed and the debt paid, but they affirmatively show that the property was not worth greatly or even materially more than the debt, or we might say, even as much as the amount of the debt. In this alternative of the bill, the debt is conceded to be *bona fide*, and it is also conceded that the property was transferred by F. G. Taylor and received by J. H. Taylor in payment and satisfaction of the debt. If the property was not substantially all the property belonging to F. G. Taylor the transaction is unobjectionable from any point of view and is not open to attack by the complainant or any other creditor, or all the creditors combined of said Taylor, and this wholly regardless of the intent beyond the payment of the debt which may have actuated the parties to the bill of sale. But it is further averred in the bill that the property thus transferred constituted substantially all the property owned by Frank G. Taylor, and that he is insolvent. On this state of the case the transfer to J. H. Taylor by force of the statute is converted into a general assignment for the equal benefit of all F. G. Taylor's creditors, including complainant and J. H. Taylor, and it would be none the less so for that it was made with intent to hinder, delay and defraud other creditors than J. H. Taylor. But the fact that the creditors generally, or that this complainant for herself and the other creditors, have the right to come into chancery and have the transfer to J. H. Taylor declared a general assignment cannot possibly give any equitable footing to this complainant on the averments in the aspect we are discussing of her present bill: she does not seek at all to have the transfer declared a general assignment for the benefit of all creditors, but to

[Taylor *et al.* v. Dwyer.]

have it declared fraudulent and void to the end that she may subject the whole property to the satisfaction of her own debt to the exclusion of the claim of all other creditors; and the presentation of a case of statutory general assignment by the averments of her bill is not in consonance with but directly contrary to her intent and purpose.

The bill then is to be taken as alleging that with intent to hinder, delay or defraud oratrix and his creditors generally F. G. Taylor transferred the property to J. H. Taylor upon a simulated and non-existent consideration, *or* that in the form of an absolute sale F. G. mortgaged the property to J. H. to secure a *bona fide* debt, *or* that the former sold it to the latter in payment of a *bona fide* and commensurate debt, *or* that he conveyed the property to J. H. in secret trust for his, the grantor's, own use and benefit. The third alternative as here stated presents no case for relief, and, of necessary consequence, the bill failing in one disjunctive aspect fails as a whole to make a case of equitable cognizance; and the demurrer going to this point should have been sustained.

The bill is, however, obviously capable of amendment, by striking out the defective disjunctive averment or otherwise; and, therefore, the motion to dismiss it for want of equity cannot be rested upon that infirmity.

The bill considered as one for the appointment of a receiver is further objectionable because of its failure to offer to do equity in respect of the debt due the Merchants and Planters National Bank secured by a mortgage on the property proposed to be subjected to complainant's judgment. It is true that mortgage is now held by Bullock and that the bill alleges that he holds it fraudulently for the Taylors, who, it is further averred, paid it off and had it transferred to him to hinder, delay and defraud the complainant, but it should notwithstanding these averments, which are made on information and belief, offer to pay Bullock the balance due on the mortgage debt in the event it should be determined that he is a *bona fide* holder of it. But this defect being curable by amendment, fur-

nishes no ground for dismissing the bill for the want of equity.

The pleas of both Frank G. Taylor and of J. H. Taylor were properly held insufficient by the chancellor. Frank G. Taylor never had any right of exemption against the claim in tort of the complainant which she has reduced to judgment in trover. That her claim was in tort is concluded for all the purposes of this case by the judgment she recovered. That it was in existence at the time of the transfer of his property by Frank G. to J. H. Taylor is alleged by the bill and not controverted. The covinous conveyance by him of property which was exempted to him from levy and sale for the payment of *debts* was as much a fraud on complainant in respect of her claim against which no property is exempt as if there were no exemption laws.

There is no merit in the contention that the bill is without equity for that it discloses that complainant had an adequate and complete remedy at law by having her execution levied on the property transferred by F. G. to J. H. Taylor. The transfer was an impediment to the efficacious pursuit of her legal remedy, especially in view of the fact that it would have been necessary for her to indemnify the sheriff before he would or was in duty bound to levy the execution, and if it was a fraudulent transfer, as alleged, she had a right to come into Chancery to remove the obstacle thus erected by the Taylors to a proper and satisfactory subjection of the property to the payment of her judgment. And having this standing in a court of equity her remedies there are the same as if she had no semblance of a legal remedy, and it is no objection to the appointment of a receiver that she had it in her power to take the property on execution by giving indemnity to the sheriff.

For the reason that the bill did not make a case for equitable interposition in one of the disjunctive sets of averments relied on for relief, the receiver should not have been appointed by the register in the first instance and the appointment should not have been confirmed by the chancellor on the appeal to him.—*Strickland v. Gay, Hardie & Co.*, 104 Ala. 375; *Lehman, Durr & Co. v. Griel Bros.*, 119 Ala. 262.

[Meyer v. Thomas, *et al.*]

The decree of the chancellor overruling the motion to dismiss the bill for want of equity will be affirmed. The decree overruling the demurrer is reversed and a decree will be here entered sustaining the demurrr and dismissing the bill unless it be amended by allowance of the register within ten days. The order of the chancellor confirming the register's appointment of the receiver is reversed, and as to that the cause is remanded so that it stands before the chancellor on appeal from the register as it did before the order of confirmation was made by the chancellor.

Affirmed in part, reversed and rendered in part, and reversed and remanded in part.